## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | |
|---|---|
| PAOLA CANAS, LINA POSADA, JESSICA BURCIAGA, JAIME EDMONDSON, and ROSIE JONES,<br><br>            Plaintiffs,<br><br>- against -<br><br>FLASH DANCERS, INC. d/b/a FLASH DANCERS and MICHAEL TOMKOVICH,<br>          Defendants. | Case No.: 3:16-CV-00393-TJC-JRK[1] |
| BROOKE TAYLOR a/k/a BROOKE JOHNSON, LAURIE ANN YOUNG, MALU LUND, SARA UNDERWOOD, and JAMIE EASON a/k/a JAMIE MIDDLETON,<br>          Plaintiffs,<br><br>- against -<br><br>M.T. PRODUCTIONS IN JACKSONVILLE, INC. d/b/a THEE OFFICERS CLUB, and MICHAEL TOMKOVICH,<br>          Defendants. | Case No.: 3:16-cv-00394-TJC-JRK |

## PLAINTIFFS' MOTION FOR FEES AND COSTS AGAINST DEFENDANTS
## FLASH DANCERS, INC. AND M.T. PRODUCTIONS IN JACKSONVILLE, INC.

Plaintiffs Paola Canas, Lina Posada, Jessica Burciaga, Rosie Jones, Brooke Taylor a/k/a

Brooke Johnson, Laurie Ann Young, Malu Lund, Sara Underwood, and Jamie Eason a/k/a Jamie

Middleton (collectively, "Plaintiffs" or "Models") by and through undersigned counsel, and

pursuant to Local Civil Rule 4.18; Rule 54(d) of the Federal Rules of Civil Procedure; and

Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a), hereby respectfully move the Court for an

---

[1]     The parties have settled their claims in Case No. 3:16-CV-00392-TJC-JBT, which was part of this consolidated action.

Order:

- Determining that this case "exceptional" under the Lanham Act, 15 U.S.C. 1117;

- Awarding Plaintiffs their attorneys' fees against Defendants Flash Dancers, Inc. and M.T. Productions in Jacksonville, Inc. (collectively "Defendants"), in an amount totaling $304,739.00; and

- Awarding Plaintiffs their costs against Defendants, in an amount totaling $47,324.05.

As described in detail below, from the day Plaintiffs sent their cease and desist letters to Defendants in September and October 2015, and over the ensuing nearly _four (4) years_ of litigation, Plaintiffs made numerous extra-judicial efforts to resolve their claims against Defendants' infringing conduct - for which Defendants never offered a scintilla of legal justification - without the need for protracted and costly litigation.  Considering those cease and desist letters; the lack of any colorable defense for the misappropriations Plaintiffs have complained of for four years; the settlement (more than two (2) years ago) with co-defendants in the _Gibson, et al v. White's Place, LLC, et al_ Case No. 3:16-CV-00392-TJC-JBT matter; Plaintiffs' Motion to Enforce the agreed-to settlement with these Defendants in October 2018; this Court's judgment as a matter of law as to Plaintiffs' state misappropriation claims at the close of the presentation of evidence, and; the jury verdict - in less than 1-hour of deliberation - on the nine (9) Plaintiffs' Lanham Act claims, this case should be deemed "exceptional" within the meaning of Section 35(a) of the Lanham Act, 15 U.S.C. 1117(a) and judicial interpretation and application of _Octane Fitness, LLC v. ICON Health & Fitness, Inc.,_ 572 U.S. 545, 134 S.Ct. 1749, 188 L. Ed. 2d 816 (2014) to Lanham Act claims, the Court should award Plaintiffs their reasonable attorneys' fees. Pursuant to Rule 54(d) of the Federal Rules of Civil Procedure and 15 U.S.C. 1117, Plaintiffs are also entitled to an award of their costs.

In support of this motion, Plaintiffs rely upon the previous pleadings in this case, the jury

trial, the proposed Bill of Costs, and the Declarations of Joseph Casas and Michael T. Fackler, as well as the arguments below.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The factual background of this matter is more fully set forth in the Second Amended Complaint. (Doc. 30), Plaintiffs' Motion for Partial Summary Judgment (Doc. 40) and the parties Joint Pretrial Statement (Doc. 70).  At trial, the evidence confirmed that (a) Plaintiffs are and/or have been professional models, actress and/or businesswoman who earn or have earned a living by promoting her image, likeness and/or identity (collectively "image") to select clients, commercial brands, media and entertainment outlets; (b) no Plaintiff has ever been employed by, contracted with or otherwise given permission or consent to Defendants in any way for the use of her image by Defendants to advertise, promote, market or endorse Defendants' strip clubs; (c) Defendants used an image of each Plaintiff in one or more ways to advertise and promote their commercial activities consisting of strip club events and sexual activities at Flash Dancers, Inc. d/b/a Flash Dancers ("Flash Dancers") and M.T. Productions in Jacksonville, Inc. d/b/a Thee Officers Club ("Officers"). (Doc. 40, Ex. 11.); and (d) no Plaintiff was offered or paid any compensation by Defendants for the use of her image to advertise, promote, market or endorse Defendants' strip clubs. (Doc. 40, p. 3.)

Moreover, the evidence proved that Defendants Flash Dancers and Officers knew they did not possess, had ever seen, or had ever requested to see any releases giving them authority to to use Plaintiffs' images; nor did Defendants ever receive any releases or other proof that anyone working for Defendants had any authority to use Plaintiffs' images. *Id*. at 5. Defendants knew that not one Plaintiff has ever been employed by or otherwise contracted with Flash Dancers or Officers to advertise, market or promote Flash Dancers or Officers or any activities or events

hosted at Flash Dancers and Officers. *Id.*

Of noteworthy significance as it pertains to Defendants' reckless and false advertising, the evidence at trial proved – through the testimony of Michael Tomkovich – that Defendants' pattern of false advertising did not stop with their receipt of the cease and desist letters four (4) years ago, but continued <u>through trial,</u> during which it was uncovered that Defendants' websites contained false and misleading information concerning the type of establishments they were and the services rendered by adult-entertainers. Despite counsel's argument to the contrary in closing, the evidence established at trial substantiates that Defendants' actions were not an honest mistake or a circumstance where Defendants were unaware that their activity was unlawful.

Moreover, as established during trial through their own model release, Defendants were fully aware at all times they were using misappropriated images of Plaintiffs and that a model's permission or a written release is required before using such a model's image or likeness for commercial purpose. Defendants' own Social Media Policy Handbook also specifically provides, "Employees should get appropriate permission before you refer to or post images of current or former employees, members, vendors or suppliers. Additionally, employees should get appropriate permission to use a third party's copyrights, copyrighted material, trademarks, service marks or other intellectual property." *Id*. at 5-6.

As mentioned above, before the start of this litigation, on September 28, 2015, and October 23, 2015, Plaintiffs served two (2) demand and cease and desist letters on Defendants. (Doc. 30, Ex. 1 and 2.) Of noteworthy mention, the damages outlined in each of the letters were exactly the same amount of damages sought at trial. *Id*. Defendants completely ignored Plaintiffs' letters. Thus, having been ignored, six (6) months later, on April 1, 2016, Plaintiffs

had no choice but to commence the subject action by filing a complaint for violations of the Lanham Act, Florida state law and common law. On June 9, 2017, just over a year later, this matter, together with *Gibson, et al v. White's Place, LLC, et al* Case No. 3:16-CV-00392-TJC-JBT was mediated. At mediation, Defendant White's Place, LLC settled with Plaintiffs, however, Flash Dancers and Officers refused to settle and decided to continue with litigation, all the while knowing they had no defense. *Gibson, et al v. White's Place, LLC, et al* Case No. 3:16-CV-00392-TJC-JBT (Doc. 76.)

Another year later, on the proverbial "eve of trial" of the first trial setting, Plaintiffs attempted to settle the matter again with Flash Dancers and Officers. However, after the parties finally entered into a settlement agreement, the following day, Defendants contacted the undersigned to inform her that the settlement was "OFF." (Doc. 55.) Almost another year later, this matter went up for trial once more. After the close of Plaintiffs' case, the Court issued a Judgment as a Matter of Law against Defendants for violation of Fla. Stat. § 540.08: Right of Publicity - Unauthorized Misappropriation of Name/Likeness and violation of Common Law Right of Publicity - Unauthorized Misappropriation of Name or Likeness. (Doc. 108.) Further, after a day of Defendants' case and in less than an hour of deliberations, the jury issued nine (9) verdicts in favor of each Plaintiff for all counts except Unjust Enrichment.

All the while, during the course of over three (3) years of litigation, Defendants never bothered to take a single deposition of a single Plaintiff or any of their experts. In terms of written discovery, Defendants only served one set of Interrogatories and Requests for Admissions on Plaintiffs. Defendants understood this to be a strict liability matter, yet continued to litigate for the sole purpose of financially bleeding out the Plaintiffs. Even after Plaintiffs' expert, Martin Buncher ("Mr. Buncher"), conducted a consumer confusion study using Plaintiffs'

images, which established a high degree of consumer confusion (Doc. 40, pp. 6-7), Defendants never retained their own expert to even attempt to contradict Mr. Buncher's findings. Defendants, did however, retain an expert to "contradict" Plaintiffs' damages expert, Stephen Chamberlin's damages calculations, yet Defendants' expert put forth absolutely no evidence of Defendants' own valuation.

## II.   LAW AND ARGUMENT

### A.   As the Prevailing Party, Plaintiffs Should Be Reimbursed for Their Attorneys' Fees in this Exceptional Case.

Section 35 of the Lanham Act, 15 U.S.C. § 1117, allows the Court to award reasonable attorneys' fees to the prevailing party in a dispute involving the Lanham Act. It does not require that a prevailing plaintiff prove its fees at trial but, rather, gives the Court discretion to award reasonable attorneys' fees to the prevailing party in "exceptional" cases. 15 U.S.C. § 1117(a).

### 1.   The Case is an "Exceptional Case" under the Lanham Act.

In *Octane Fitness, LLC v. ICON Health & Fitness, Inc.,* 572 U.S. 545, 134 S.Ct. 1749, 188 L. Ed. 2d 816 (2014), the Supreme Court interpreted the Patent Act's attorney fee provision, which is identical to that of the Lanham Act. The *Octane Fitness* Court rejected the Federal Circuit's standard as "unduly rigid," but instead found that the word "exceptional" should be interpreted in accordance with its ordinary meaning, and held:

> an "exceptional" case is simply one that stands out from others with respect to the ***substantive strength*** of a party's litigating position (considering both the governing law and the facts of the case) or the ***unreasonable manner in which the case was litigated***. District courts may determine whether a case is "exceptional" in the case-by-case exercise of their discretion, considering the totality of the circumstances.

*Id*. at 554, 134 S. Ct. at 1749 (emphasis added.)

6

The Supreme Court listed the relevant non-exhaustive factors appropriate for consideration under this analysis, including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 554, 134 S.Ct. 1749 n. 6; *see also Fresh Del Monte Produce Inc. v. Del Monte Foods Co.,* 933 F.Supp. 2d 655, 665 (S.D.N.Y. 2013) (in determining whether a case is "exceptional" under the Lanham Act, the court must "weigh considerations such as the closeness of the case, the tactics of counsel, the conduct of the parties, and any other factors that may contribute to a fair allocation of the burdens of litigation as between winner and loser) (quoting *S.C. Johnson & Son, Inc. v. Carter–Wallace, Inc.,* 781 F.2d 198, 201 (Fed. Cir. 1986).)

District courts sitting in the Eleventh Circuit have repeatedly applied the *Octane Fitness* holding to Lanham Act cases. *See e.g. CarMax Auto Superstores, Inc. v. StarMax Fin., Inc.*, 192 F. Supp. 3d 1279, 1283 (M.D. Fla. 2016) ("In light of the almost identical fee-shifting provisions under the Lanham and Patent Acts, courts within this Circuit and elsewhere have applied the *Octane Fitness* standard in considering whether attorney fees are warranted in trademark infringement actions. In the absence of Eleventh Circuit guidance, the Court similarly elects to apply the *Octane Fitness* standard in assessing the instant Motion."); *see also Tobinick v. Novella*, 207 F.Supp.3d 1332, 1343-42 (S.D. Fla. 2016) (applying *Octane Fitness* to Lanham Act case and in evaluating whether that was an exceptional case, the Court considered the procedural history of the case"); *Kilopass Tech, Inc. v. Sidense Corp.*, 738 F.3d 1302, 1311 (Fed. Cir. 2013) (district court should consider the "totality of circumstances" in determining whether patentee acted in subjective bad faith and should consider whether circumstantial evidence would support an inference of bad faith).

The *CarMax Auto Superstores, Inc.* matter is completely in line with the facts of the matter at hand. As provided in Plaintiffs' Motion for Summary Judgment and during trial, it was established that (a) each Plaintiff is or was a professional model whose actual images were used in Defendants' advertisements (Doc. 40, pp. 16-17.); (b) at no time did Defendants request permission from Plaintiffs to use their images; and (c) Defendants' unauthorized use of Plaintiffs' images caused confusion as to the affiliation, connection, or association between Plaintiffs and Defendants' goods or consumer experience, or as to Plaintiffs' sponsorship or approval of Defendants' goods or consumer experience. (Doc. 40, p. 18.)

Additionally, Plaintiffs established at trial that Defendants knew they did not possess nor had ever seen any releases executed by any of the Plaintiffs giving authority to Defendants to use Plaintiffs' images; nor did Defendants ever receive any releases or other proof that anyone working for Defendants had any authority to use Plaintiffs' images. Further, Defendants knew that not one Plaintiff has ever been employed by or otherwise contracted with Flash Dancers or Officers to advertise, market or promote Flash Dancers or Officers or any activities or events hosted at Flash Dancers and Officers. (Doc. 40, p. 5.) Defendants also had a policy in place that required everyone to get permission from "current or former employees, members, vendors or suppliers" before posting their images. *Id*. at 5-6. Defendants' objective was to place attractive models such as Plaintiffs in different positions, backgrounds, or posing with different individuals to promote Flash Dancers or Officers and to attract more patrons, thus generating revenue for Defendants. *Id*. at 11. "An award of attorneys' fees is appropriate here. Defendants willfully infringed Spin's intellectual property rights, and an award of attorneys' fees furthers the goals of the Lanham Act and Copyright Act, including deterrence of willful infringement. *See Kepner-Tregoe, Inc. v. Vroom*, 186 F.3d 283, 289 (2d Cir. 1999) (affirming award of attorneys' fees

under the Copyright Act as 'justified based on the court's finding of willfulness" and "in line with the statutory goal of deterrence')." *Spin Master Ltd. v. Alan Yuan's Store,* 325 F. Supp. 3d 413, 427 (S.D.N.Y. 2018).

> Upon consideration, the Court finds that both *Octane Fitness* factors are met here. First, the substantive strength of CarMax's litigating position distinguishes this action from others. A side-by-side comparison of the CarMax Design Marks and the Infringing Marks—as provided in the Complaint and the Objection—easily reveals the strength of CarMax's infringement claims. Further, pursuant to the Default Judgment, CarMax did not license or otherwise authorize StarMax to use the CarMax Design Marks or any confusingly similar marks. Given the direct competition of the goods and services offered by CarMax and StarMax, the Court finds that StarMax deliberately intended to create customer confusion through use of the Infringing Marks. Not only did StarMax have constructive knowledge of the CarMax Design Marks by virtue of CarMax's federal registrations, but it also had actual knowledge of the impropriety of its conduct, as evidenced by Plaintiff's Pre-Suit Notification efforts and StarMax's repeated promises to remedy its actions. Indeed, the Court is unable to conceive of any non-meritless defense that would have been available to StarMax in this action.

*CarMax Auto Superstores, Inc.,* 192 F. Supp. at 1283; *see also Domond v. PeopleNetwork APS,* 750 Fed. Appx. 844, 848 (11th Cir. 2016) (affirming award of attorneys' fees under *Octane Fitness* because losing party's case was "baseless" and their litigation posture was "unusually weak"); *4 Pillar Dynasty, LLC v. New York & Co., Inc.*, 257 F.Supp.3d 611, 626 (S.D.N.Y. 2017) (awarding attorneys' fees under the stricter, pre-*Octane Fitness* standard, where "the issue of infringement was not particularly close and defendants did not put forth any evidence indicating that they had a good-faith defense."), *aff'd in part, vacated in part, remanded by,* 2019 WL 3719971 (2d Cir. Aug. 8. 2019).

> **a.   Considering the Governing Law and the Facts of the Case, Plaintiffs' Litigating Position was Extremely Strong and Defendants' Litigating Position was Extremely Weak.**

The first factor to be considered in determining whether a case is "exceptional" under *Octane Fitness*, is the substantive strength of a party's litigating position, taking into account

9

both the governing law and the facts of the case. *See Donut Joe's, Inc.*, — F.Supp.3d —, 2015 WL 4094212, *3 (N.D. Ala. July 7, 2015) (citing *Octane Fitness*, 134 S.Ct. at 1756). Here, both the law and facts strongly favor Plaintiffs.

At the end of the presentation of evidence during trial, Plaintiffs moved for a directed verdict under Rule 50 of Federal Rules of Civil Procedure on Plaintiffs' Fla. Stat. § 540.08 claims.  In evaluating Plaintiffs' motion, the Court noted that it is unusual for trial courts to grant directed verdict motions.  However, the Court went on to determine that the facts adduced at trial clearly established Plaintiffs' Fla. Stat. § 540.08 claims and further that Defendants had failed to establish any viable defenses to the same.  The Court granted Plaintiffs' *ore tenus* Rule 50 Motion.  Each Plaintiff then received a jury verdict in her favor on both of her Lanham Act claims for false advertising and false endorsement. (Docs. 99-107). The Court then subsequently issued a judgment in each Plaintiff's favor on the Lanham Act. (Docs. 109-112; *Taylor, et al v. M.T. Productions in Jacksonville, Inc.*, Case No.: 3:16-cv-00394-TJC-JRK (Docs. 36-40).)[2]

Liability is established under the Lanham Act upon a finding of a "likelihood of confusion." In support of their burden on their false advertising and false endorsements claims, Plaintiffs expended significant money hiring a consumer confusion expert and having him conduct a survey meant to gauge confusion levels. Implicitly acknowledging they could not find any expert to evaluate Defendants' advertisements and <u>not</u> find significant confusion levels, Defendants hired no confusion expert of their own, hired no rebuttal expert, and essentially did

---

[2]     Of course, this should have come as no surprise to Defendants, who are able not only to read for themselves the plain language of the Florida misappropriation statute but were on notice that at least one other court in this Circuit had granted similarly situated plaintiffs' motion for summary judgment on this claim. *See Taylor, et al v. Trapeze Management, LLC, et al* Case No. 0:17-cv-62262-KMM (S.D. Fla. Mar. 26, 2018); *see also Gibson v. BTS N., Inc.*, No. 16-24548-CIV, 2018 WL 888872 (S.D. Fla. Feb. 14, 2018);  *Geiger v. Goldfinger's South, Inc.* Case No. 1:18-cv-23745-UU (S.D. Fla. July 16, 2019).
        Further, the Court has also granted similarly situated plaintiffs their motion for summary judgment on the Lanham Act. *See Edmonson, et. al. v. Velvet Lifestyles, LLC., et al.*, Case No. 15-CV-24442, ECF No. 174 (S.D. Fla. July 28, 2017).

nothing other than to seek to have Plaintiffs' expert excluded via a *Daubert* motion and then, when that failed, sought at trial to have him excluded again. This Court of course rejected both attempts.

The facts alleged in support of those claims demonstrate that this is an exceptional case warranting the imposition of fees because of the strong merits of Plaintiffs' litigating position and the complete absence of merit of Defendants' position. Defendant had no defense to justify its infringing conduct and Plaintiffs had every right and obligation to enforce such rights by bringing this lawsuit. *Cf. Conagra, Inc. v. Singleton*, 743 F.2d 1508 (11th Cir. 1984) (recognizing that a trademark owner who inexcusably delays in asserting a right or claim thereby causing the defendant undue prejudice can be estopped of its exclusive claim to use the mark). Accordingly, the Court should find, as it did in *CarMax Auto Superstores, Inc.*, that an award of fees "is appropriate under the totality of the circumstances of this case." *CarMax Auto Superstores, Inc.,* 192 F. Supp. at 1283.

Thus, a fee award is appropriate under the first *Octane Fitness* factor because Defendants' position had no merit or reasonable basis and its conduct after being notified of the infringement was beneath any reasonable standard. *See First Mariner Bank v. Resolution Law Grp., P.C.,* No. CIV.A. MJG–12–1133, 2015 WL 5255275, at *3 (D. Md. Sept. 8, 2015) (finding a Lanham Act case was exceptional under the *Octane Fitness* standard and awarding fees where the defendant's position had no reasonable basis and the defendant's conduct of the litigation was beneath any reasonable standard). Accordingly, this Court should find Defendants liable for Plaintiffs' reasonable attorneys' fees.

> **b.      This is an Exceptional Case Because Defendants Litigated the Case in an Unreasonable Manner.**

While the standard of determining whether a case is exceptional has changed, the policy

behind Section 35(a) has not. As several courts have noted, one of the reasons Congress enacted the fee provision of Section 35 was to make victims of infringement whole. *See Tiramisu Int'l LLC v. Clever Imports LLC*, 741 F. Supp. 2d 1279, 1294–95 (S.D. Fla. 2010) (citing *Vital Pharms., Inc. v. Am. Body Bldg. Prods., LLC*, 510 F.Supp.2d 1043, 1045 (S.D. Fla. 2007)).

As recounted above, when Plaintiffs discovered Defendants were using their images to advertise Defendants' strip clubs and their events, Plaintiffs immediately contacted Defendants outside of court, and sent two (2) cease and desist/demand letters ("Demand Letters") (Doc. 30, Ex. 1 and 2.) Plaintiffs, however, never received any response from Defendants. Of noteworthy significance, Plaintiffs pre-litigation Demand Letters offered to settle the matter at a value close to what was awarded by the jury. Defendants ignored Plaintiffs Demand Letters, and as such, Plaintiffs had no choice but to initiate this action resulting in a protracted and costly litigation over a three (3) year period. Even during litigation, Plaintiffs attempted to resolve the matter outside of court through mediation and private settlement, however, Defendants engaged in strategic games (which appeared to be driven by and through their insurance adjuster, John Curtis, of Nationwide/Scottsdale Insurance) in an attempt to waste Plaintiffs' and this Court's financial resources rather than settling the matter. This dilatory conduct throughout the litigation and gamesmanship was a deliberate and willful conduct that warrants the finding of an exceptional case. "Frivolous litigation diverts the time and attention of judges and their chambers away from meritorious lawsuits, leaving the public and other litigants to pay for misbehaving lawyers' malfeasance, mainly in the form of longer delays. And, as the familiar maxim goes, 'justice delayed is justice denied.' Of course, the Court cannot restore lost time to those parties whose cases were delayed while the Court sorted through the mess of Wilner's and Farah's creation. But the Court can restore the public fisc and deter similar abuses of the court system by

requiring Wilner and Farah to reimburse the taxpayer for the waste of judicial resources. *In re Engle Cases*, 283 F. Supp. 3d 1174, 1253 (M.D. Fla. 2017); *see also United States v. Silverman*, 745 F.2d 1386, 1395 (11th Cir. 1984) ("wast[ing] scarce judicial and parajudicial resources...impedes the due administration of justice" and, in a very real sense, amounts to obstruction of justice.")[3]

On June 9, 2017, all the parties went to mediation in three original consolidated matters.[4] John Curtis of Nationwide/Scottsdale Insurance attended the mediation together with another insurance adjuster for AIX Specialty Insurance Company. During mediation, Plaintiffs in the *White's Place* matter easily resolved their claims with AIX Specialty Insurance Company and settled the entire *White's Place* matter. *Gibson et al v. White's Place, LLC et al,* Case No. 3:16-cv-00392-TJC-JBT (June 20, 2017) (Doc. 76). John Curtis, however, refused to participate in any meaningful discussions.

Just over a year later, and a few days before the original date of trial, counsel for Plaintiffs, counsel for Defendants, and John Curtis appeared telephonically for the Court Ordered Telephone Status Conference to discuss the potential settlement of the subject matter consisting of the *Flashdancers* and *Officers* cases. (Doc. 53.) On September 25, 2018, shortly after the Status Conference, counsel for Plaintiffs received an email from Defense counsel with a Settlement Offer Letter appended thereto from John Curtis. (Doc. 55, Ex. 1 and 2.) Counsel for Plaintiffs then telephoned Defense counsel to inform him that the Settlement Offer Letter was accepted. As a result, that same day, both counsel for Plaintiffs and Defendants telephoned the Court and informed the Court that a settlement agreement has been reached in this matter. In

---

[3]     Unlike Defendants, Plaintiffs attempted to limit the Court's as well as Defendants' resources by filing consolidated cases instead of individual cases on behalf of each individual Plaintiff.

[4]     John Curtis insisted that all Plaintiffs in the three consolidated matters appear at the mediation in person all the while he knew he was not interested in settling at mediation. This was solely done to continue to financially drain Plaintiffs. (Doc. 53.)

turn, this Court issued an Order directing the parties to file a joint motion for dismissal or other appropriate documents to close out the file by November 26, 2018. (Doc. 54.) However, right after the telephone call with the Court, counsel for Plaintiffs received another email from Defenses counsel asking that the Settlement Offer Letter be confirmed in writing. (Doc. 55, Ex. 3.) In response, counsel for Plaintiffs emailed Defense counsel to confirm that the Settlement Offer Letter was accepted and also asked that Nationwide make a full settlement payment within fourteen (14) days of receipt of Plaintiffs' signatures on the parties' Settlement Agreement and Release. *Id*. at Ex. 4. Counsel for Defendants then emailed Plaintiffs' counsel to confirm the fourteen (14) day payment. *Id*. at Ex. 5. As a result, Plaintiffs' counsel began drafting the final Settlement Agreement and Release. The following day, on September 26, 2018, out of nowhere, counsel for Plaintiffs received a direct email from John Curtis stating the following, "Please be advised yesterday's global settlement is OFF. Frankly I am tired of your bad faith tactics…It was my understanding that each of the cases would be dismissed- now you are asking for more money on cases we settled..." *Id*. at Ex. 6. Clearly, John Curtis understood that Plaintiffs were preparing for an expensive trial, then a couple of days before trial presented a settlement offer he knew Plaintiffs would accept. Then, he intentionally and unilaterally withdrew the offer without any justification. Not only is this a direct sign of gamesmanship, but a blatant intent to harm Plaintiffs financially. *(See the email chain from John Curtis attached hereto as **Exhibit A**.)*

Further, even in an attempt to streamline the issues for trial, Plaintiffs' counsel contacted Defendants' counsel to discuss the foundation and admissibility of the subject images of Plaintiffs, as Defendants have never raised it as an issue throughout the entire course of litigation. Defense counsel advised Plaintiffs' counsel that Defendants will consent to the foundation of the subject images of Plaintiffs as they appeared on Defendants' Facebook pages.

Plaintiffs' counsel advised Defendants' counsel that she will send out a proposed stipulation for execution. However, when Plaintiffs' counsel emailed Defendants' counsel the said proposed stipulation, Defense counsel all of a sudden represented that he had no authority to do sign it now. *(See the email chain regarding the foundation of Plaintiffs' images attached hereto as Exhibit B.)*

Courts have found that similar imbalances between parties' litigating positions are sufficient to award attorney fees under the Lanham Act. *E.g.*, *Donut Joe's*, 116 F.Supp.3d at 1293–94; *High Tech Pet Products, Inc. v. Shenzhen Jianfeng Electronic Pet Product Company, Ltd.* No. 6:14–cv–759–Orl–22TBS, 2015 WL 926048 (M.D. Fla. Feb. 12, 2015), *adopted and confirmed by* 6:14–cv–759–Orl–22TBS, 2015 WL 926023, at \*2 (M.D. Fla. Mar. 4, 2015). Although the Supreme Court characterized this factor as the "unreasonable manner in which the case was *litigated*," *Octane Fitness*, 134 S.Ct. at 1756 (emphasis added), the *Octane* Court also authorized district courts to award fees "in the rare case in which a party's unreasonable *conduct*—while not necessarily independently sanctionable—is nonetheless so exceptional as to justify an award of fees," *id.* at 1757 (emphasis added). *CarMax Auto Superstores, Inc.,* 192 F. Supp. at 1284 ("… the Court agrees with CarMax that the unreasonable conduct referenced by the *Octane* Court extends to all circumstances surrounding the litigation event, not solely the conduct within the confines of the immediate litigation... Both CarMax and StarMax offer competing products and services. It is no mistake that their name and marks are confusingly similar. Consequently, *the exceptional disparity between the parties' litigating positions warrants an award of attorney fees*.") (emphasis added.)

Throughout the three (3) years of litigation and even during trial, as this Court found, Defendants did not have any defense. Although Defendants raised various empty boilerplate

Affirmative Defenses, *none* of those defenses were presented at trial. Defendants also never filed

a motion for summary judgment as all of those same defenses were already previously raised in

Defendants' Motion to Dismiss, which was denied by this Court back in 2017. (Doc. 29.)

> The district court first found that the case stood out due to the strength of
> [Plaintiff's] litigating position: [Plaintiff] adopted its logo at least 15 years before
> [Defendant] began using its similar logo; [Plaintiff's] composite mark was strong;
> the marks were very similar; and both parties provided the same "product," used
> the same advertising channels, and targeted the same "customers." In sum, "[t]he
> likelihood of confusion [was] so great that it would appear that customer
> confusion was [Defendant's] motivation for adopting the [] Mark." Further,
> [Defendant] presented meritless defenses at the summary judgment stage: a laches
> argument that was not supported by "any credible evidence," as well as the bare
> assertion that the composite marks were different because one depicted an eagle
> while the other depicted a hawk.
>
> We find no abuse of discretion in the district court's conclusion that [Plaintiff]
> had an exceptionally strong infringement claim.

*All. for Good Gov't v. Coal. for Better Gov't*, 919 F.3d 291, 296 (5th Cir. 2019).

## 2.    Plaintiffs are Entitled to an Award of Attorneys' Fees.

Once it has been determined that the case is an "exceptional case," the Court must assess

the plaintiffs' request for reasonable attorneys' fees. In doing so, the Court must calculate the

"lodestar," or the number of reasonable hours spent working on the case multiplied by a

reasonable hourly rate. *Loranoerv. Stierham*, 10 F.3d 776, 781 (11th Cir. 1994). The Court may

decide whether an adjustment to the lodestar is needed based on the results of representation.

*ACLU of Ga. v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999).

Computing a fee award requires an exercise of judgment, as no precise rule or formula

exists. *Villano v. City of Boynton Beach*, 254 F.3d 1302, 1305 (11th Cir. 2001). The Court is

deemed "an expert on the question [of attorney's fees] and may consider its own knowledge and

experience concerning reasonable and proper fees and may form an independent judgment either

with or without the aid of witnesses as to value." *Norman v. Hous. Auth. of City of Montgomery*,

836 F.2d 1292, 1303 (11th Cir. 1988).

Further, the Court may consider the twelve factors outlined in *Johnson v. Georgia Highway Express. Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974); *Hensley v. Eckerhart*, 461 U.S. 424, 429–30, 103 S. Ct. 1933, 1937–38, 76 L. Ed. 2d 40 (1983). The factors include: 1) the time and labor required; 2) the novelty and difficulty of the issues; 3) the requisite skill needed to properly serve the client; 4) the likely preclusion of other employment by the attorney accepting the case; 5) the customary fee; 6) whether the fee is contingent or fixed; 7) time limitations imposed by the client or the situation; 8) the volume of damages involved and the results obtained; 9) the experience, reputation, and skill of the attorneys; 10) the undesirability of the case; 11) the nature and length of the attorney-client relationship; and 12) awards in similar cases. *Johnson*, 488 F.2d at 717–19.

### a.    Reasonable Hourly Rates.

A reasonable hourly rate is "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience and reputation." *Id.* at 1299. The party seeking fees must provide "satisfactory evidence that the requested rate is in line with prevailing market rates," which requires more than the affidavit of the attorney working on the case. *Id.* In making its determination, the Court may also consider evidence of rates for similar services in the locality or opinion evidence, as well as its own expertise and judgment. *Id.*

The hourly rates charged by Plaintiffs' attorneys are as follows:

| Timekeeper | Position | Hourly Rate |
|---|---|---|
| Joseph Casas | Lead Counsel and Senior Partner | $425.00 |
| John Golaszewski | Partner | $400.00 |
| Dennis Postiglione | Partner | $400.00 |

17

| Ludmila Khomiak | Partner | $250.00 |
|---|---|---|
| Sarah Cabarcas-Osman | Partner | $250.00 |
| Linda Davila | Senior Paralegal | $100.00 |
| Ashley Martinez | Paralegal | $55.00 |

(*See Declaration of Joseph Casas ("Casas Dec.") at **Exhibit C** attached hereto; and Declaration of Michael T. Fackler ("Fackler Dec.") at **Exhibit D** attached hereto.*) These hourly rates, in the opinion of Plaintiffs' attorneys and in the opinion of Michael T. Fackler, a Jacksonville attorney unaffiliated with the case, are reasonable and in line with the prevailing market rates for a Lanham Act case.  (Fackler Dec. at ¶¶ 16-18.)

### b.    Hours Reasonably Expended.

The Court's next inquiry in computing the lodestar is ascertaining whether a reasonable number of hours were expended. Any calculation of hours reasonably expended should omit hours that are "excessive, redundant, or otherwise unnecessary" and any time spent on "discrete and unsuccessful claims." *Norman*, 836 F.2d at 1301 (quoting *Hensley*, 461 U.S. at 434). In considering this factor, the Court can consider "evidence of prevailing views among practitioners in the area on such subjects." *Id.*

In this case, Plaintiffs' attorneys and paralegals expended 1,049.50 hours prosecuting Plaintiffs' federal and state claims in order to obtain a judgment against Defendants, which amounts to $316,052.00. (Casas Dec. at ¶ 21.) This total number of hours was adjusted to **1014.7** hours (for a total of $304,739.50) by Michael T. Fackler, a Jacksonville attorney unaffiliated with the case. The adjusted number of hours spent on this consolidated matter, in the opinion of Mr. Fackler, were not out of the ordinary considering the issues, the filings and briefings submitted in the case, and the ultimate result. (Fackler Dec. at ¶¶ 19-20.)

18

**B.      Plaintiffs Should Be Reimbursed For Their Costs.**

"Unless a federal statute, these rules, or a court order provides otherwise, costs . . . should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). "Generally, Federal Rule of Civil Procedure 54(d) authorizes an award of costs to prevailing parties as a matter of course, while 28 U.S.C. § 1920 enumerates the types of costs that may be recovered." *Tiramisu Int'l*, 741 F. Supp. 2d at 1297-98 (citing *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441–2, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987) and *Maris Distributing Co. v. Anheuser-Busch, Inc.*, 302 F.3d 1207, 1225 (11th Cir. 2002)). Section 1920 provides:

A judge or clerk of any court of the United States may tax as costs the following:

> (1)      Fees of the clerk and marshal;
>
> (2)      Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
>
> (3)      Fees and disbursements for printing and witnesses;
>
> (4)      Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
>
> (5)      Docket fees under section 1923 of this title;
>
> (6)      Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

When awarding costs, the Court has limited discretion and may tax only those items outlined in Section 1920, unless otherwise authorized by statute. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441–42, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987). Indeed, "[u]nder Rule 54(d), there is a strong presumption that the prevailing party will be awarded costs." *Mathews v. Crosby*, 480 F.3d 1265, 1276 (11th Cir. 2007) (citing *Arcadian Fertilizer, L.P. v. MPW Indus. Serv., Inc.,* 249 F.3d 1293, 1296 (11th Cir. 2001)). Concurrent with this motion,

Plaintiffs have filed a Bill of Costs as ***Exhibit E*** and in the form set forth by the local rules of this Court.

Further, 15 U.S.C. 1117(a), "Profits, damages and costs; attorneys fees," states that "[w]hen a … violation under section 1125(a) or (d) of this title … shall have been established in any civil action arising under this chapter, the plaintiff **shall** be entitled…and subject to the principles of equity, to recover … (3) the costs of the action." (emphasis added.) *Protection One Alarm Monitoring, Incv. V. Executive Protection One Security Service, LLC*, 553 F.Supp.2d 201, 209 (2008) ("Courts generally award costs to prevailing parties in cases involving violations of the Lanham Act.") (citations omitted).)

## III.    <u>CONCLUSION</u>

WHEREFORE, Plaintiffs PAOLA CAÑAS, LINA POSADA, JESSICA BURCIAGA, ROSIE JONES, BROOKE TAYLOR A/K/A BROOKE JOHNSON, LAURIE ANN YOUNG, MALU LUND, SARA UNDERWOOD, AND JAMIE EASON A/K/A JAMIE MIDDLETON respectfully request, in light of the record evidence and for all of the reasons set forth above, that the Court (1) enter an order finding that this case is an "exceptional" case under the Lanham Act; (2) award Plaintiffs their attorneys' fees against Defendants FLASH DANCERS, INC. AND M.T. PRODUCTIONS IN JACKSONVILLE, INC., in an amount totaling $304,739.50; and (3) award Plaintiffs their costs against Defendants, in an amount totaling $47,324.05.

Dated: August 19, 2019.                         Respectfully submitted,

**THE CASAS LAW FIRM, P.C.**

By: *<u>/s/ Ludmila Khomiak</u>*
Ludmila Khomiak, Esq.
Florida Bar No.: 91757
mila@casaslawfirm.com
80 S. W. 8th St., Suite 2000
Miami, FL 33130

20

Phone: (786) 671-3244
Fax: (786) 671-3243

Joseph N. Casas, Esq.
*Pro Hac Vice Admission*
joseph@casaslawfirm.com
402 West Broadway, Suite 400
San Diego, CA 92101
Phone: (855) 267-4457
Fax: (855) 220-9626

John V. Golaszewski, Esq.
*Pro Hac Vice Admission*
john@casaslawfirm.com
1745 Broadway, 17th Floor
New York, NY 10019
Phone: (646) 872-3178
Fax: (855) 220-9626

Dennis C. Postiglione, Esq.
*Pro Hac Vice Admission*
dennis@casaslawfirm.com
Ste E240 #445
3801 N Capital of Texas Hwy
Austin, TX 78746
Phone: (512) 806-7699
Fax: (855) 220-9626

*Attorneys for Plaintiffs*

## <u>RULE 3.01(g) CERTIFICATION</u>

Pursuant to Rule 3.01(g), Local Rules, United States District Court, Middle District of Florida, the undersigned has conferred with counsel for the Defendants and is authorized to represent that Defendants oppose the entry of an order granting this motion.

Respectfully submitted,

**THE CASAS LAW FIRM, P.C.**

By: */s/Ludmila Khomiak*
Ludmila Khomiak, Esq.
Florida Bar No.: 91757

21

mila@casaslawfirm.com
Brickell Bayview Center
80 S. W. 8th Street, Suite 2000
Miami, FL 33130
*Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 19, 2019, I electronically filed the foregoing with

the Clerk of the Court by using CM/ECF system which will send a notice of electronic filing to

the following:

Luke Lirot, Esq.
Law Offices of Luke Lirot, P.A.
2240 Belleair Road, Suite 190
Clearwater, Florida 33764
luke2@lirotlaw.com

Robert R. Hearn, Esq.
Phelps Dunbar, LLP
100 S Ashley Dr Ste 2000
Tampa, FL 33602-5315
robert.hearn@phelps.com

*Attorneys for Defendants*

By: */s/Ludmila Khomiak*
Ludmila Khomiak, Esq.
Florida Bar No.: 91757