UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

PAOLA CANAS, LINA POSADA,
JESSICA BURCIAGA, JAIME
EDMONDSON, and ROSIE JONES,

      Plaintiffs,

v.                                 Case No.: 3:16-cv-00393-TJC-JRK

FLASH DANCERS, INC. d/b/a
FLASH DANCERS, and MICHAEL
TOMKOVICH,

          Defendants,

_____/

BROOKE TAYLOR a/k/a BROOKE
JOHNSON, LAURIE ANN YOUNG,
MALU LUND, SARA UNDERWOOD,
and JAMIE EASON a/k/a JAIME
MIDDLETON,

      Plaintiffs,

v.                                 Case No.: 3:16-cv-00394-TJC-JRK

M.T. PRODUCTIONS IN JACKSONVILLE,
INC., d/b/a THEE OFFICERS CLUB,
and MICHAEL TOMKOVICH,

        Defendants,

_____/

**DEFENDANTS FLASH DANCERS, INC. AND M.T. PRODUCTIONS IN
JACKSONVILE, INC.'S  MEMORANDUM OF LAW
IN OPPOSITION TO PLAINTIFFS' MOTION FOR FEES AND COSTS**

       Defendants Flash Dancers, Inc. and M.T. Productions in Jacksonville, Inc. (collectively

"Defendants"), pursuant to Local Rule 3.01(b) and Fed. R. Civ. P. 54(d)(2), hereby respond to

Plaintiffs' Motion for Fees and Costs. (Doc. 119).  The Motion for Fees and Costs should be

denied for the reasons stated herein.[1]

## MEMORANDUM OF LAW

### I.   INTRODUCTION

Plaintiffs seek fees and costs on the premise that this case is an "exceptional" case under Section 35(a) of the Lanham Act (15 U.S.C. §1117).  According to Plaintiffs, this case has two basic features that make it exceptional: 1) Defendants' litigation positions were allegedly weak, while Plaintiffs' were strong and 2) Defendants refused to consummate a settlement, then had the audacity to take Plaintiffs to trial.  Plaintiffs' arguments fail to carry the day.

With regard to the claimed weakness of Defendants' case, Plaintiffs rely almost exclusively on the fact that the court granted judgment as a matter law to them, and against Defendants, on Plaintiffs' *Florida law* misappropriation claims.  The strength of Plaintiffs' state law claims is immaterial to whether they had exceptionally strong Lanham Act claims, because Plaintiffs' entitlement to fees arises exclusively under the Lanham Act.  Focusing on the relative strength of the parties' Lanham Act litigating positions, Defendants plainly had the upper hand. The core of Plaintiffs' case—expert testimony regarding consumer deception—was exposed at trial for the farce that it always was.  After considering the evidence, the jury awarded only nominal damages to Plaintiffs under the Lanham Act, failing to find grounds supporting an award of actual damages.  Likewise, the jury found that the Defendants' use of Plaintiffs' images was not willful or deliberate and that an award of profits was not otherwise warranted.[2]

---

[1]     Contemporaneous with filing this memorandum of law, Defendants have filed a motion to stay consideration of Plaintiffs' Motion for Fees and Costs pending resolution of Defendants' Rule 50 motion and to allow Defendants to make an evidentiary submission in opposition to the amount of fees and costs sought by Plaintiffs if the Court determines Plaintiffs are entitled to such relief.  If Defendants' motion for judgment as a matter of law is granted as to Plaintiffs' Lanham Act claims, the Motion for Fees and Costs can be denied as moot.
[2]     Although outside the scope of Plaintiffs' Lanham Act claims, it bears noting in the context of Plaintiffs' arguments, that Plaintiffs also jettisoned overly aggressive state FDUTPA and punitive damages claims against Defendants and did not prevail at trial on their state unjust enrichment claims. They also dropped their Lanham Act

As for the failed voluntary resolution of this matter and the subsequent litigation, this, too, is insufficient to transform this case into an exceptional one. There was nothing nefarious about the parties' inability to close on the settlement they thought they had reached. Plaintiffs moved this court to enforce the putative settlement agreement, which also purported to dispose of claims in other cases, arguing that Defendants' insurer tried to change the terms of the deal after it was accepted. (Doc. 55 at p. 11) This court found, however, that there was simply a failure of mutual assent preventing the formation of an enforceable agreement. (Doc. 58) Defendants' subsequent insistence that Plaintiffs meet their burden of proof, and the specific manner in which they defended the case, hardly casts this case as exceptional. This is particularly true given that during the run-up to trial, various district courts, including this one, were granting summary judgment to defendants on Lanham Act claims brought by some of the same plaintiffs from this case because their evidence, which was virtually identical to that relied on in this matter, failed to support false advertising or endorsement claims.[3]

In short, although Plaintiffs have prevailed on their Lanham Act claims, at least as of the filing of this memorandum, they did so only "nominally." And, if anything, it was Plaintiffs' pie-in-the-sky view of their case, which failed to materialize at trial, that pushed this matter to the lengths to which it was taken.

---

claims against Defendants' principal (Michael Tomkovich) at trial in the face of the court entering judgment in Tomkovich' s favor.

[3] *See, e.g., Edmondson v. 2001Live*, 2019 U.S. Dist. LEXIS 41028 (M.D. Fla. Jan. 15, 2019); *Toth v. 59 Murray Enters.*, 2019 U.S. Dist. LEXIS 1355 (S.D.N.Y. Jan. 3, 2019); *Gibson v. SCE Grp., Inc.*, No. 15 Civ. 08168 (ER), 2019 U.S. Dist. LEXIS 119325 (S.D.N.Y. July 17, 2019).

## II.   ARGUMENT

### A.  The Applicable Statute and the *Octane Fitness* Test

A prevailing party may recover reasonable fees and costs under Section 35(a) of the

Lanham Act in "exceptional cases." 15 U.S.C. §1117(a).  Interpreting language in the Patent Act

that is identical to the Lanham Act's attorney's fee provision, the Supreme Court explained:

> [A]n exceptional case is simply one that stands out from others with
> respect to the substantive strength of a party's litigating position
> (considering both the governing law and the facts of the case) or the
> unreasonable manner in which the case was litigated. District courts
> may determine whether a case is "exceptional" in the case-by-case
> exercise of their discretion, considering the totality of the
> circumstances.  As in the comparable context of the Copyright Act,
> there is no precise rule or formula for making these determinations,
> but instead equitable discretion should be exercised in light of the
> considerations we have identified.

*Octane Fitness, LLC v. ICON Health and Fitness, Inc.,*  572 U.S. 545, 554 (2014) (internal

quotation omitted).

In *Octane Fitness*, the Court also endorsed several non-exclusive factors district courts

may consider in determining whether a particular case is exceptional, including "frivolousness,

motivation, objective unreasonableness (both in the factual and legal components of the case)

and the need in particular circumstances to advance considerations of compensation and

deterrence." *Id.* at n.6.  The United States Court of Appeals for the Eleventh Circuit, like many

other circuit courts, has adopted and applied the *Octane Fitness* analysis to fee claims made

under the Lanham Act. *Tobinick v. Novella*, 884 F.3d 1110, 1117-18 (11th Cir. 2018).

### B.  The Poor Quality of Plaintiffs' Litigating Position and the Reasonableness of Defendants' Position

Plaintiffs are not entitled to fees on the strength of their substantive Lanham Act

positions.  Plaintiffs' arguments regarding the strength of their litigation position relative to

Defendants' is at once both strange and misguided.  First, Plaintiffs argue that their Lanham Act

position was strong and Defendants' weak because Plaintiffs prevailed as a matter of law *on their state law misappropriation claims*. Attempting to drive their request for attorneys' fees with the merits of their Florida law misappropriation claims, Plaintiffs go as far as to classify their entire case as a "strict liability matter," which is an obvious mischaracterization of their Lanham Act claims. (Doc. 119 at p. 5)

The quality of Plaintiffs' state law claims has nothing to do with the strength of their Lanham Act claims. The Florida misappropriation and Lanham Act claims require completely different elements of proof and vindicate totally different interests. *Cf* FLA. STAT. § 540.08 to 15 U.S.C. § 1125(a) and Jury Instructions 7-8. (Doc. 98)  Section 540.08, Florida Statutes and its common law analogue, simply protect all persons from the use of their likeness or name for commercial purposes without their consent.  By its terms, the Florida misappropriation act does not protect consumers or business competitor against unfair trade practices. *See* FLA. STAT. §540.08.[4]

By contrast, Plaintiffs' Section 43(a) false advertising and endorsement claims collectively require showings of a protectable interest in one's image—a sort of common law copyright—and different manifestations of consumer confusion and deception.  *See, e.g., Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1247 (11th Cir. 2002) (identifying elements of a Lanham Act false advertising claim); and *Tana v. Dantanna's*, 611 F.3d 767, 773-75 (11th Cir. 2010) (outlining elements of false endorsement claim).  Section 43(a) of the Lanham Act "was intended . . . to protect consumers and competitors against all

---

[4]     Defendants further dispute that Plaintiffs' Florida misappropriation case was strong. As explained at greater length in their Motion for Judgment as a Matter of Law, there was no direct evidence at trial indicating that it was an employee or agent of Defendants who used Plaintiffs' images in the offending Facebook posts. (*See* Doc. 124 at §II. C.).

forms of misdescription or misrepresentation of products and services in commerce." *Yameta Co. v. Capitol Records, Inc.*, 279 F. Supp. 582, 586 (S.D.N.Y. 1968), *inj. vacated and remanded for further hearing,* 393 F.2d 91 (2d Cir. 1968); it was not passed simply to make sure that no citizen had their likeness used for commercial purposes without consent.

And then, there is the fact that neither Section 35(a) of the Lanham Act (15 U.S.C. §1117), nor the Supreme Court's ruling in *Octane Fitness*, contemplate an award of attorney's fees where a plaintiff prevails on a claim under that Act that is weak and on a stronger state law claim running parallel to it.  Hence, the alleged strength, as well as the outcome, of Plaintiffs' Florida misappropriation claims is meaningless to the *Octane Fitness* analysis and Plaintiffs' entitlement to attorney's fees under the Lanham Act.[5]

Second, Plaintiffs argue that their Lanham Act claims were strong, and Defendants' opposition to them weak, because Plaintiffs hired a confusion expert (Martin Buncher) to conduct an expensive consumer study and because Defendants did not depose him or offer a rebuttal expert.  Although the amount of money Plaintiffs spent on Buncher is certainly of questionable value, Plaintiffs had no choice but to hire *some* consumer survey expert, inasmuch as they had to prove consumer confusion and deception but had *no other extrinsic evidence* of actual or likely confusion.[6]  If anything, the fact that Plaintiffs relied upon a retained expert to prove their Lanham Act claims indicates that those claims were inherently more attenuated than ones based on actual consumer confusion (*i.e.,* those grounded upon an actual patron of the Defendants' clubs coming forward and attesting to being confused or misled by the ads at issue).

Additionally, contrary to Plaintiffs' assertion, not taking Buncher's deposition tells this

---

[5]     The undersigned cannot locate a single case that supports the idea that a strong state law claim that is collateral to a Lanham Act claim is relevant in assessing a party's litigation position under the *Octane Fitness* test.
[6]     *See, Hickson Corp.*, 357 F.3d at 1261; *see also Edmondson*, 2019 U.S. Dist. LEXIS 41028, at *14; *see also Toth*, 2019 U.S. Dist. LEXIS 1355, at *14-15.

court nothing about Defendants' evaluation of Plaintiffs' claims or their own defenses. Defendants had Buncher's Rule 26 report, which was more than sufficient to inform them of his opinions and the grounds upon which he was likely to be impeachable at trial. Defendants also had rulings from other district courts either excluding or sharply criticizing Buncher's work in identical cases, some involving Plaintiffs from this matter, which allowed counsel to be sufficiently prepared to address his trial testimony, without taking an expensive deposition. *See, generally Edmondson*, 2019 U.S. Dist. LEXIS 41028; *Toth*, 2019 U.S. Dist. LEXIS 1355.

As for not disclosing or presenting a rebuttal expert on confusion, it would seem a tall task for any defendant to persuasively *disprove* confusion through surveys. Plus, it is not Defendants' burden to show a lack of confusion at trial; it is Plaintiffs' burden to prove it existed. As such, attempting to prevail in this matter by attacking Plaintiffs' experts was a perfectly reasonable strategy, especially given the difficulty the experts had experienced in other related cases. If anything, not taking extensive expert depositions actually saved Plaintiffs money.

Taking a more methodical look at the relative strength of the Parties' substantive Lanham Act litigation positions, it is obvious Plaintiffs' case was far from exceptional. In Defendants' Motion for Judgment as a Matter of Law (Doc. 124), which they adopt here by reference, Defendants have identified in detail multiple evidentiary gaps in Plaintiffs' Lanham Act claims.[7] These elemental defects in Plaintiffs' Lanham Act claims also demonstrate why it was Plaintiffs' false advertising and endorsement case that was weak. To summarize:

- Plaintiffs inarguably had no proof that any actual consumers of Defendants' clubs were misled by the use of Plaintiffs' images; (Doc. 124 at pp. 5-7)

---

[7] Even if the Court denies Defendants' Motion for Judgment as a Matter of Law before ruling on Plaintiffs' motion for fees, the arguments asserted in the Rule 50 motion remain persuasive as to why this was not an exceptional plaintiffs' case.

- Plaintiffs' expert testimony regarding likely consumer deception or confusion, as well as of consumer purchasing decisions, was blatantly flawed in that:
  - Buncher, the expert who delivered the testimony, made repeated, material misrepresentations to the jury regarding the nature of the surveys underlying his testimony; (*Id.* at pp. 7-10)
  - The surveys supporting Buncher's testimony did not test likely consumers of the Defendants' goods and services; (*Id.*)
  - The surveys did not test seven of the nine images at issue in this case; (*Id.* at pp. 12-14)
  - Buncher's survey questions were facially defective, as identified by other courts that considered them; (*Id.* at pp. 11-12) and
  - The surveys lacked other indicia of reliability, such as the use of a control group. (*Id.* at pp. 10-11)

The fact that Buncher's testimony of consumer deception was so faulty is arguably sufficient, standing alone, to defeat Plaintiffs' fees claim. As noted above, Buncher's survey did not test consumers of Defendants' goods and services, which, at a minimum so weakened Plaintiffs' Lanham Act claims that attorneys' fees cannot be awarded here.

Of equal importance in judging the strength of Plaintiffs' Lanham Act claims, it is manifest that Buncher mischaracterized the survey he conducted to gauge consumer deception by testifying that it was given to consumers that had been to gentlemen's clubs within the last two years and largely focused on 20-40 year-olds. (*See* Doc. 124, pp. 7-9). This was not true. The fact that Buncher so flagrantly misrepresented the nature of his survey to the jury, while being led by Plaintiffs' counsel on direct examination, makes it appear that Plaintiffs were trying to

cover up a major, known infirmity in their case.[8]  The only other viable explanation for why, and

how, both Buncher and Plaintiffs' counsel so plainly misrepresented the consumer survey—one

of Plaintiffs' most important single pieces of evidence—is that *both* forgot what Buncher

actually did to test consumer confusion and *both* failed to look at his full report before putting

Buncher on the stand, under oath, at trial, in federal district court.  For these reasons, it is

Plaintiffs' Lanham Act case that appears to have been frivolous, or at least highly suspect.

Of course, the jury verdicts confirm that, on the merits, Plaintiffs' Lanham Act claims

were anything but exceptional.  Plaintiffs made a feeble attempt to establish an entitlement to lost

profits as a form of Lanham Act damages, which was roundly rejected.  Specifically, the jury

found no willful or deliberate violation of the Act warranting such damages. (Docs. 99-107)

Similarly, the jury shot down Plaintiffs on their request for actual damages under the Lanham

Act.  (*Id.*)  In the final analysis, the jury awarded $75,000 total to nine Plaintiffs (less than

$8,500 per Plaintiff on average) in "nominal" damages under the Lanham Act—a fantastically

unexceptional outcome for a fantastically unexceptional set of claims. (*Id.*)

### C.  The Manner in which the Case Was Litigated

Plaintiffs also argue that they are entitled to fees because Defendants litigated in an

unreasonable manner.  This is untrue, and the few examples of Defendants' tactics to which

Plaintiffs point fall far short of meeting the "exceptional case" standard in any event.

---

[8]      Interestingly, Buncher, much to the Court's dismay, testified at trial without the benefit of having his full report with him (Testimony of Martin Buncher, Ex. A, 95:4-18), and, on the eve of trial, Plaintiffs' counsel intentionally purged the version of Buncher's report that they marked as a possible exhibit for trial of "1,000 pages", presumably including a copy of the survey underlying his opinions and the respondent demographic data. (*See* time keeping entry of Linda Davila on 7/19/19, Ex.1 to Ex C, Motion for Fees (Doc. 119-3, p. 23 of 24)). These acts suggest a concerted effort to keep Buncher's survey out of the spotlight, so he and Plaintiffs' counsel could try to mischaracterize it at trial.

1.  Defendants' Response to the Cease and Desist Letters

Plaintiffs point to the fact that Defendants putatively ignored Plaintiffs' cease and desist letters as an example of Defendants' unreasonableness. Defendants did not ignore Plaintiffs' cease and desist letters. Michael Tomkovich, Defendants' controlling officer, testified at trial that, upon receiving cease and desist letters from Plaintiffs' counsel he "complied, [to] the best of [his] ability" (Testimony of Michael Tomkovich, Vol. 2, Ex. B, 21:4-11) by:

- Terminating Shawn Hopper, the independent contractor whom he believed was responsible for the allegedly improper Facebook posts that led to the cease and desist letters; (Testimony of Michael Tomkovich, Vol. 1, Ex. C, 42:15-43:1)

- Conferring with his attorney about what to do in response to the letters; (Ex. B, 21:12-16) and

- Following advice of counsel, hiring a computer consultant to take down the allegedly offending images. (*Id.*, 22:10-19)

This hardly amounts to ignoring the cease and desist letters. If Plaintiffs were uncertain about Defendants' in-kind response to their letters, all they needed to do was go on the relevant Facebook pages and look for their images. That Defendants did not rush to cut Plaintiffs checks for the exorbitant sums they demanded in the cease and desist letters is hardly unreasonable, especially in light of the Lanham Act damages the jury awarded to Plaintiffs, which were in amounts far, far less than what Plaintiffs demanded in their letters.

2.  Failed Settlement Efforts

Plaintiffs argue that Defendants' insurer's failure to settle Plaintiffs' claims at a mediation in June 2017, at which a related case was settled by another insurer, is indicative of an unreasonable approach to litigation that makes this case exceptional. Plaintiffs then complain

that the collapse of a broad, multi-case settlement that included the Lanham Act claims asserted in this case is also evidence of unreasonable litigation tactics by Defendants.  Both assertions hardly warrant discussion.

In terms of the mediation of various consolidated cases in June 2017, some claims (those against a club called White's Place) were settled, some (those asserted in this case) were not. There is no evidence that Defendants or their insurer mediated in bad faith—just a bald assertion that Defendants' insurer refused to participate in what Plaintiffs describe as "meaningful discussions."  There was nothing filed by the Plaintiffs or the mediator contemporaneous with the mediation that suggests anyone associated with the Defendants acted improperly, either at mediation or by not settling.  Defendants' insurer simply did not share the same view of Plaintiffs' case as its unaffiliated counterpart and, thus, this case was not resolved.

As for the subsequent failed global settlement, which included the claims asserted in this case, this court determined that the settlement failed, not because of Defendants' bad faith litigation tactics, but because there was no meeting of the minds between the parties on essential terms of the putative agreement. (Doc. 58)  In other words, notwithstanding the accusations Plaintiffs made about Defendants and their insurer in support of Plaintiffs' motion to enforce the putative global settlement, which they have repeated here, this court implicitly determined that there was no trickery or impropriety associated with the failure of the global settlement.  The court found the parties simply miscommunicated, such that there was no assent to the alleged settlement agreement.  (*Id.*)  If the court believed Defendants had acted in bad faith in refusing to go forward with the parties' alleged settlement, presumably it would have enforced the alleged agreement.  This event is, therefore, a dead letter and not evidence of improper litigation tactics warranting the shifting of fees under *Octane Fitness*.

3.   The Refusal to Stipulate to the Authenticity of Plaintiffs' Posted Images

Plaintiffs finally point to a claimed reversal of course on a simple stipulation to the "foundation" of Plaintiffs' images as evidence of unreasonable litigation tactics. Plaintiffs' litigation skin cannot possibly be so thin as to believe this is an unreasonable tactic warranting the shifting of fees. Moreover, the lack of an authenticity stipulation for Plaintiffs' images did not impact its admissibility at trial or lead to the presentation of a single additional witness. It was a total non-event. Again, this is hardly the type of thing that any reasonable person would think warrants the shifting of over $300,000 in fees to the allegedly offending party. *Cf Te-Ta-Ma Truth Foundation-Family of URI, Inc. v. World Church of the Creator*, 323 F.3d 248, 264 (7th Cir. 2004) (discussing example of oppressive litigation tactics, including threats of physical violence and ignoring injunctions, that warrants fees under Lanham Act and explaining "[p]laying hard—by the rules—cannot suffice to make a case exceptional under § 1117(a).").

Finally, on a general note, Defendants' refusal to settle and their insistence on putting Plaintiffs to their proof must be viewed in the context of the complex of cases asserted by Plaintiffs against gentlemen's clubs across the country. This is, unfortunately, not a single, stand-alone case, but one of many related disputes. Accordingly, the results of other cases legitimately affected the defense of this case. More concretely, Defendants prepared this case for trial against the backdrop of at least three district courts granting summary judgment in favor of defendants in virtually identical Lanham Act cases, featuring claims by the some of the same Plaintiffs from this case. *See* n. 3, *supra.* In some of these related cases, the courts criticized the work of, or struck, the same experts Plaintiffs were using in this case. *See, e.g., Edmondson*, 2019 U.S. Dist. LEXIS 41028; *Toth*, 2019 U.S. Dist. LEXIS 1355. The litigation and resulting rulings in these companion cases provided legal and factual grounds for a solid defense in the

absence of depositions and also provided more than a reasonable substantive basis on which to persist against Plaintiffs' hefty demands in this case.

For the foregoing reasons, Plaintiffs have failed to show that the discretionary *Octane Fitness* factors support an award of fees and costs to Plaintiffs in this case under Section 35(a) of the Lanham Act.

### D. The Claimed Amount of Plaintiffs' Fees and Costs

By motion filed contemporaneously with this memorandum of law, Defendants, pursuant to Fed. R. Civ. P. 54(d)(2)(C), have requested the opportunity to make a separate evidentiary submission on the appropriate value of fees and costs to be awarded to Plaintiffs if the court determines they are entitled to such under the Lanham Act. *See Lanier Constr., Inc. v. Carbone Props. of Mobile, LLC*, 253 Fed. Appx. 861 (11th Cir. 2007) (*per curium*); *United States ex rel. Southeast Enter. Group v. Skanska Building, Inc.*, 209 Fed. Appx. 880 (11th Cir. 2006) (*per curium*).

There are multiple issues that must be addressed in determining the amount of Plaintiffs' fees if the court determines they are entitled to them. By way of example only, the court will need to assess whether:

- The rates charged by Plaintiffs' counsel are reasonable;
- It was appropriate for four "partner" level attorneys to handle the vast majority of the work on Plaintiffs' case;
- The hours of Plaintiffs' various counsel were duplicative or redundant;
- The hours spent on specific tasks were reasonable and appropriate;
- Counsel should be compensated for block billing entries on the invoices attached to Plaintiffs' motion; and

- Certain fees were incurred relative to the Lanham Act claims on which Plaintiffs prevailed, as opposed to prosecuting claims that were dropped or which arose under state law, for which there is no entitlement to fees.

The detailed evidentiary submissions required to address these issues, and the court's assessment of them, is best undertaken after the court determines the basic question of entitlement to fees under the Lanham Act, which Defendants submit are not warranted in this unexceptional case.  It would be inefficient and unjust to require Defendants to address these matters, including by retaining a fee expert, before their Rule 50 motion is resolved and this court determines whether Plaintiffs are entitled to an attorney's fee award in the first instance.

### E.  Plaintiffs' Bill of Costs

Because Plaintiffs have submitted a Bill of Costs form in support of their Motion for Fees and Costs (Doc. 119-5), which may trigger an assessment of Plaintiffs' entitlement to costs under 28 U.S.C. § 1920 as opposed to the Lanham Act, Defendants, out of an abundance of caution, will address the propriety of awarding the costs requested in the bill.  Defendants reserve their right to be heard further on this issue, consistent with Fed. R. Civ. P. 54 and as the court may otherwise allow.

Under 28 U.S.C. § 1920,

> A judge or clerk of any court of the United States may tax as costs the following:
>
> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title [28 USCS § 1923];

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title [28 USCS § 1828].

Generally, there is a presumption in favor of awarding costs to a prevailing party. *Arcadian Fertilizer, L.P. v. MPW Indus. Servs., Inc.*, 249 F.3d 1293, 1296 (11th Cir. 2001). The applicable rules do not, however, allow unfettered discretion to tax costs. *See Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987); *EEOC v. W&O, Inc.*, 213 F.3d 600, 620 (11th Cir. 2000). 28 U.S.C. § 1920 specifically enumerates the costs a prevailing party may recover. *Crawford Fitting*, 482 U.S. at 445; *See also Scelta v. Delicatessen Support Servs., Inc.*, 203 F. Supp. 2d 1328, 1339 (M.D. Fla. 2002).

Although "the burden falls on the losing party to demonstrate that a cost is not taxable, the prevailing party 'still bears the burden of submitting a request for [costs] that [will] enable the court to determine what [costs] were incurred and whether [the prevailing party] is entitled to them.'" *Hamilton v. Sheridan Healthcare, Inc.*, 2015 U.S. Dist. LEXIS 191801, at *3-*4 (S.D. Fla. Jan. 21, 2015), *report and recommendation adopted by* 2015 U.S. Dist. LEXIS 191798 (S.D. Fla. March 25, 2015), *affirmed by* 700 Fed. Appx. 883 (11th Cir. June 21, 2017) (citing, *Ferguson v. North Broward Hosp. Dist.*, 2011 U.S. Dist. LEXIS 90326, 2011 WL 3583754, at *3 (S.D. Fla. 2011) (quoting *Lee v. Am. Eagle Airlines, Inc.*, 93 F. Supp. 2d 1322, 1335 (S.D. Fla. 2000))).

Here, Plaintiffs have sought the following costs that are *not* subject to taxation:

1. Transcript Costs

Plaintiffs have sought the recovery costs in the amount of $7,349 for recorded or printed transcripts of the depositions of the following witnesses: Messrs. Zablow; Tomkovich; and Franclemont and Misses Jones and Posada. Of the total amount sought for the deposition

15

transcripts, a significant portion of the total charges ($1,214.50) were for costs outside that of the actual copy of the transcript, such as shipping and handling, conference room rentals and "amenities", extra copies, production costs, and the like. These amounts are generally not recoverable. *See Hamilton v. Sheridan Healthcare, Inc.*, 2015 U.S. Dist. LEXIS 191801, at *10-*11. Therefore, the court should reduce the transcript costs to $6,135.

### 2. Copying Costs

Plaintiffs have sought $1,874.93 for printing/copying costs. As a general rule, copies that were obtained only for convenience of counsel, versus those actual and necessary for use in a proceeding, are not recoverable. For example, extra copies of filed papers, correspondence, and copies of cases are considered obtained only for convenience of counsel. *Am. Home Assur. Co. v. Phineas Corp.*, 18 Fla. L. Weekly Fed. D 110, 2004 U.S. Dist. LEXIS 26858 (M.D. Fla. Sept. 17, 2004). Plaintiffs' request for copying costs cannot be granted for a few reasons.

Of the $1,874.93 sought for copies, $1,470.54 are the subject of a single FedEx Office receipt attached to the bill of cost. (Doc. 119-5, p. 14 of 34) The copy of the FedEx receipt appears to be have taken by a cell phone and is illegible. A large section of the receipt depicted in the photo is folded over and cannot be read at all. The print that is visible is very small and largely illegible. As such, Plaintiffs have not met their burden of showing that the costs subject to this receipt are eligible for reimbursement.

Likewise, none of the copying receipts has any information relating to what the subject copies were of or for. Thus, Plaintiffs have not established that the subject copies were of a type for which Plaintiffs can recover costs. *See, e.g., Cadle Co. v. Matos (In re Matos)*, 381 B.R. 394 (Bankr. M.D. Fla. 2007) (denying debtors' request for photocopying costs under 28 USCS § 1920 because the copies were not identified with sufficient specificity to enable court to

determine whether the copies were necessarily obtained for use in case).  Accordingly,

Defendants submit that the court should disallow all of the requested copying costs.  At a

minimum, the court should reduce the requested amount by $1,470.50 to $404.39.

3.  Fees for Witnesses

Plaintiffs seek a remarkable $22,921.50 in trial witness fees. Of these, $18,918.25 are for

witness fees and subsistence and travel expenses of *Plaintiffs*.  Plaintiffs cannot recover their

own travel and subsistence expenses simply because they were also witnesses.  *See, e.g., Jensen*

*v. Lawler*, 338 F. Supp. 2d 739, 748 (S.D. Tex. 2004); *Engels v. United States*, 2 Cl. Ct. 166, 167

(U.S. Cl. Ct. 1983) ("courts have not generally allowed as costs a party's travel and subsistence

expenses") (citing *Hodge v. Seiler*, 558 F.2d 284, 287 (5th Cir. 1977)); *Dowdell v. City of*

*Apopka*, 521 F. Supp. 297, 306 (M.D. Fla. 1981); *Morrison v. Alleluia Cushion Co.*, 73 F.R.D.

70, 71-72 (N.D. Miss. 1976); *Lee National Corp. v. Kansas City Southern Industries, Inc.*, 50

F.R.D. 412, 413 (S.D. N.Y. 1970).

Another $3,138 is for travel (mileage) of retained experts Buncher and Chamberlin, both

of whom came to Jacksonville from outside the Middle District of Florida.  In the case of a

witness from outside the district, the mileage allowance should be for only the portion of travel

that occurred within district or for the actual mileage traveled in and out of the district up to 100

miles, whichever is greater.  *Kemart Corp. v. Printing Arts Research Laboratories, Inc.*, 232

F.2d 897 (9th Cir. 1956).  Accordingly, this element of Plaintiffs' witness costs should be

disallowed or reduced to 100 miles per expert witness ($116 total).

Alternatively, all of Plaintiffs' requests for witness mileage costs (including any relating

to Plaintiffs if they are generally allowed) should be stricken because mileage is only available if

the relevant witness travel by private vehicle.  28 U.S.C. § 1821(c)(2).  Plaintiffs offered no

proof that any of the witnesses for whom mileage expenses are sought traveled to trial by a privately owned vehicle. It is difficult to imagine that Buncher and several Plaintiffs all drove roundtrip to Jacksonville for trial from the West Coast or Texas. Plaintiffs' request for mileage should be denied on these grounds, to the extent the court concludes parties can recover travel expenses under 28 U.S.C. § 1920.

4. <u>Other Costs</u>

Finally, Plaintiff seeks $13,611 in "other costs." This request links to a receipt from "Legal Arts" attached at page 32 of Doc. 119-5. It appears that Legal Arts provided Plaintiffs with assistance in designing demonstrative exhibits for use at trail. This type of work is generally categorized as exemplification subject to 28 U.S.C. § 1920(4) and, thus, is only subject to reimbursement if it is necessary for use in the case. *See Crandall v. City & County of Denver*, 594 F. Supp. 2d 1245, 1251 (D. Colo. 2009) (Costs for production of demonstrative exhibits and visual aids as exemplification and copies of papers under 28 USCS § 1920(4) are not properly taxed if information is presented in form that is redundant, does little to aid in court's understanding of evidence, or could have been effectively presented through less expensive means) (citing *Leggett & Platt, Inc. v. Hickory Springs Mfg. Co.*, 149 F.Supp.2d 394, 397 (N.D. Il. 2001)).

In this case, there was no need whatsoever for demonstrative exhibits. Plaintiffs had copies of the images underlying their claims and the means to project them to the jury through standard trial technology. There were no difficult scientific or technical questions that required intricate explanation that was assisted by illustrations, animations, or charts. To be sure, it is difficult to remember whether any demonstratives were used at all in presenting evidence in this case. As such, the $13,611 for Visual Arts' work in preparing demonstratives was unnecessary

and not taxable.

     5.  Total Costs Allowable

Based on the foregoing, Defendants respectfully submit the court should award Plaintiffs

no more than $8,566.57 ($800.00 for filing and clerk fees; $766.92 for service of summons and

subpoenas; $6,135.00 for transcripts; and $864.65 in witness fees) pursuant to 28 U.S.C. § 1920.

**III.    CONCLUSION**

For the reasons set forth herein, Defendants ask that Plaintiffs' Motion for Fees and Costs

be denied.  To the extent the court determines Plaintiffs are entitled to fees and costs under the

Lanham Act, Defendants request the opportunity to make an evidentiary submission relating to

the appropriate amount of any such award.  Finally, to the extent the court treats Ex. E to

Plaintiffs' Motion for Fees and Costs as a free-standing bill of costs seeking reimbursement of

expenses under 28 U.S.C. § 1920, Defendants submit that Plaintiffs should be awarded no more

than $8,566.57 subject to further reduction at the court's discretion.


Dated:  September 3, 2019

Respectfully Submitted,

*/s/  Robert R. Hearn*
Robert R. Hearn, Esquire
Florida Bar No. 0067687
**PHELPS DUNBAR LLP**
100 South Ashley Drive, Suite 2000
Tampa, Florida 33602-5311
Telephone: 813.472.7550
Facsimile: 813-472-7570
Email:  Robert.hearn@phelps.com

And

Luke Lirot, Esq.
Law Offices of Luke Lirot, P.A.
2240 Bellair Road, Suite 190
Clearwater, FL 33764

Email: luke2@lirotlaw.com

Counsel for Defendants

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 3, 2019, a true copy of the foregoing was filed electronically with the Clerk of the Court which by operation of the Court's electronic filing system will serve all parties registered to receive notices via CM/ECF for this case.

/s/ Robert R. Hearn

Attorney

PD.26852874.1