**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

PAOLA CANAS, LINA POSADA,
JESSICA BURCIAGA, JAIME
EDMONDSON, and ROSIE JONES

    Plaintiffs,

v.                                       Case No. 3:16-cv-393-J-32JRK

FLASH DANCERS, INC.,

    Defendant.

---

BROOKE TAYLOR aka Brooke
Johnson, LAURIE ANN YOUNG,
MALU LUND, SARA
UNDERWOOD, and JAMIE
EASON aka Jamie Middleton,

    Plaintiffs,

v.                                       Case No. 3:16-cv-394-J-32JRK

M.T. PRODUCTIONS IN
JACKSONVILLE, INC.,

    Defendant.

---

## **O R D E R**

    Plaintiffs are professional models. These consolidated cases concern two adult entertainment clubs' use of Plaintiffs' images in advertisements without

their consent. The jury returned verdicts in favor of nine Plaintiffs. The cases are now before the Court on several post-trial motions. (Docs. 119, 125, 126, 128, 138).

The Second Amended and Consolidated Complaint alleges: violations of the Lanham Act, 15 U.S.C. § 1125, for false advertising and false endorsement (Counts I and II), statutory and common law misappropriation of name and likeness (Counts III and IV), violations of Florida's Deceptive and Unfair Trade Practices Act (Count V), civil theft under Florida law (Count VI), and unjust enrichment (Count VII). (Doc. 30). Counts V and VI were dismissed before trial. (Doc. 50).

The cases proceeded to trial the week of July 22, 2019, with the jury returning verdicts in favor of nine Plaintiffs on Counts I–IV, and for Defendants on Count VII. (Docs. 30, 99–107). During trial, at Plaintiffs' request and with Defendants' consent, the Court dismissed with prejudice the claims against Michael Tomkovich, the owner of the clubs, in his individual capacity. (Doc. 108). Additionally, the Court granted Plaintiffs' Rule 50 motion for judgment as a matter of law on Counts III and IV—the Florida law misappropriation claims—against Defendants Flash Dancers, Inc. and M.T. Productions in Jacksonville, Inc. Id. The jury determined the amount of damages on those counts. (Docs. 99–107). The Court denied Defendants' Rule 50 motion and their renewed motion to exclude Plaintiffs' expert Martin Buncher, who testified

2

concerning a survey he conducted regarding consumer confusion and deception—an element of the Lanham Act claims. (Doc. 108).

After trial, Plaintiff Jaime Edmondson Longoria,[1] whose claims were not sent to the jury because she was unwilling to attend trial, filed a notice requesting that the Court set her claims for a three-day jury trial. (Doc. 125). Additionally, Defendants filed an Amended Renewed Motion for Judgment as a Matter of Law, (Doc. 126), to which Plaintiffs responded, (Doc. 132). Plaintiffs filed a motion for fees and costs under the Lanham Act, (Doc. 119), which Defendants oppose, (Doc. 127). Defendants also filed a Motion to Stay Consideration of Plaintiffs' Motion for Fees and Costs. (Doc. 128).

## I. PLAINTIFF EDMONDSON'S CLAIMS

During the final pretrial conference, Plaintiffs Edmondson, Posada, and Jones requested to testify via live video feed, claiming they could not attend trial for various reasons. The Court permitted the parties to take pretrial video depositions and stated that it would rule on their admissibility at trial. The Court granted the use of Young and Posada's depositions in lieu of live testimony without objection. However, Defendants objected to the use of Edmondson's deposition in lieu of live testimony. After hearing argument, the

---

[1] Longoria is her married name. At different times, the parties have referred to her as Longoria and as Edmondson. For this Order, the Court will refer to her as Edmondson, as the parties did in their pending motions and responses. (Docs. 125, 138).

Court found that Edmondson's deposition was inadmissible under Rule 32, Federal Rules of Civil Procedure and Rule 802, Federal Rules of Evidence. (Doc. 136 at 20–28). At Plaintiffs' request, and with Defendants' consent, the Court severed Edmondson's claims and required the parties to "file a notice informing the Court how they intend to proceed with Edmondson's claims." (Doc. 108). After trial, Edmondson filed a notice requesting to proceed to a separate three-day trial. (Doc. 125). Defendants oppose the request and seek dismissal of Edmondson's claims. (Doc. 138). Edmondson responded in opposition. (Doc. 140).

Dismissing a claim with prejudice under Rule 41(b) for failure to prosecute is only appropriate if: "(1) a party engages in a clear pattern of delay or willful contempt (contumacious conduct); and (2) the district court specifically finds that lesser sanctions would not suffice." <u>Betty K Agencies, Ltd. v. M/V MONADA</u>, 432 F.3d 1333, 1338 (11th Cir. 2005) (quoting <u>World Thrust Films, Inc. v. Int'l Family Entm't, Inc.</u>, 41 F.3d 1454, 1456 (11th Cir. 1995)); <u>see</u> Fed. R. Civ. P. 41(b). This sanction is more appropriate "where a party, as distinct from counsel, is culpable." <u>Id.</u>

On December 6, 2018, the parties filed a notice stating that they agreed to start trial "<u>at any time</u> convenient to this Court after April 1, 2019." (Doc. 59) (emphasis added). The Court then set the trial to begin on July 15, 2019. (Doc. 60). That Order states: "The parties are directed to notify the Court promptly

4

of any development subsequent to the entry of this Order which would in any way affect the trial of their case. . . ." Id. On April 30, 2019, the Court held a telephone conference to inform the parties of a potential scheduling conflict because of the Court's criminal trial docket. (Doc. 65). During the call, the parties informed the Court that the trial would likely take eight days, and the Court informed the parties that it had reserved two weeks just in case.

On May 17, 2019, the Court rescheduled the trial to begin with jury selection on July 22, 2019 and trial to begin the following day. (Doc. 68). On June 21, 2019, the parties filed their pre-trial statement and respective witness lists. (Doc. 70). Edmondson was listed on Plaintiffs' witness list. (Doc. 70-3). On July 1, 2019, the Court conducted the final pretrial conference. At this hearing, Plaintiffs' counsel first raised the issue that three plaintiffs would be unable to attend trial, and they requested to appear via live video feed. Plaintiffs' counsel explained that two of the models—Posada and Jones—were either pregnant or nursing and lived abroad. As for Edmondson, Plaintiffs' counsel stated: "because this trial was postponed a week later, she already had travel plans that she can't reschedule."[2]

---

[2] In several places, the Court quotes statements made at hearings or trial without citing them. In those instances, the Court is relying on the unpublished transcript which does not appear on the docket because neither party has ordered it.

5

The Court immediately informed Plaintiffs of its skepticism regarding Edmondson's alleged unavailability, stating:

> [Edmondson, who] has vacation I'm not so excited about. I mean . . . one could argue that if it's important enough to have a case in federal court, that you might show up
> . . . .
> I can understand if you can't show up, and then it really is . . . a problem. And it sounds like maybe the first two of your cases [Posada and Jones] would qualify. [Edmondson] I'm a little less clear on. . . .

The Court expressed its displeasure in not learning about a plaintiff's trial conflict until the final pretrial conference. Plaintiffs' counsel responded:

> MS. KHOMIAK: Well, we tried to get her to move things around and she wasn't able to.
>
> THE COURT: She wasn't able to or she won't?
>
> MS. KHOMIAK: She wasn't able to. She also has two kids. And she has to be in three states that same week. So, in all honesty, Your Honor, I tried really hard with her to see if anything can be done, if we can just fly her in, and she can't move it.
>
> THE COURT: Right. And what I'm saying to you is that . . . everybody has priorities. And sometimes it indicates that she's not necessarily all that concerned or interested in this case in federal court, not enough to change her plans. And that's what I'm trying to figure out.
>
> . . . .
>
> THE COURT: She could be here the week of the 15th, but she can't be here the week of the 22nd?
>
> MS. KHOMIAK: Yes.
>
> THE COURT: And what's the reason for that?
>
> MS. KHOMIAK: So she resides in Arizona.
>
> THE COURT: Yes.

6

> MS. KHOMIAK: And she has two young children. Her husband plays professional [baseball], so he's away from home a lot of the times.
>
> . . . .
>
> MS. KHOMIAK: . . . . And so he's . . . at practice a lot of times so she's taking care of the kids by herself. And so she's bringing them to see him for the first time in a long time in the beginning of the week, and then she's traveling to Georgia with the kids in the middle of the week, on Wednesday, and then she's traveling to England on that Friday.

The Court allowed the parties to take video depositions of all three witnesses and explained that Edmondson would have to more fully explain the reasoning for her absence for the Court to find her unavailable.

After jury selection, the parties provided the transcript of Edmondson's deposition so the Court could make a ruling on its admissibility. After reviewing the transcript, the Court expressed concern that Edmondson's testimony did not demonstrate that she was able to attend trial the week before, despite her counsel's claim that delaying trial by a week caused Edmondson's unavailability. In fact, Edmondson made clear in her deposition that her travel plans were set in November 2018, and she would not have come to trial the week of July 15, 2019, in any event.

The following day, the Court stated that it had a difficult decision related to Edmondson because her professed reasons for unavailability did not add up. The Court told the parties that if it did not find unavailability, then Plaintiffs

would have to decide to try the case without her or dismiss her without prejudice. The Court took the matter under advisement.

On the third day of trial, the Court heard additional argument on the issue. It then made its ruling:

> So the plaintiffs seek to introduce three plaintiffs' depositions in this case, claiming that each of the three plaintiffs are unavailable for trial.
> Two of those plaintiffs, Ms. Jones and Ms. Posada, live and work internationally and cannot travel because they're either pregnant or have infant children and are the sole caregiver at this time.
> The Court has granted the use of their depositions in lieu of live testimony without objection and under Rule 32.
> However, the defendants do object to the use of Ms. Longoria's [Edmondson's] deposition. She lives in Scottsdale, Arizona, with her two children. Her husband plays professional baseball. I presume for the San Francisco Giants, because that's where he's residing during the season.
> . . . Ms. Longoria testified in her deposition as to what her basis for unavailability was . . . she was going to San Francisco to see her husband with the children, and then she was flying, this week, to Georgia – not explained why . . . then on to London, England, and had preexisting travel plans that could not be changed.
> . . . I have the transcript of the final pretrial conference in which counsel for the plaintiff indicated that . . . Ms. Longoria couldn't appear because, when the Court postponed the trial to a week later, she already had travel plans that she could not reschedule.
> Originally I did have the trial set for July 15th. I did have to move it a week because of criminal matters. And so that was . . . one of the bases for unavailability. Actually, it was the only basis that counsel argued at the final pretrial conference. Today I've gotten a little additional argument.
> The point of the matter is, when you read Ms. Longoria's deposition, there does not appear to be any support for the idea that she actually was planning to come on July 15th, and it was

8

. . . only the Court's change of the trial date that . . . interfered with her ability to come.

In fact, I think a fair reading of her deposition testimony is that, as far back as November of 2018, she sets her travel schedule and was unable, and I would say unwilling, to change her schedule to come to the trial.

Indeed, it was not apparent from the testimony from Ms. Longoria that she ever really intended to come to the trial or that there . . . was any time that would have been available to her, no matter when the Court had set the case for trial.

And I will note that even though the change was made to the week of July 22nd, it was done quite a while ago, and obviously plans could have been changed if . . . Ms. Longoria had wanted to do so.

[A]lso, the facts of the deposition disclose that Ms. Longoria does not have any financial handicap in order to be able to travel to Jacksonville, nor did child care appear to be an issue, although she cited child care -- I think she has a four- and a six-year-old -- and the inability to leave them or to travel with them -- it appeared for all the world that, in fact, her children were traveling with her this week to Georgia and then on to England. And so that does not appear . . . to really bear up under analysis either.

. . . . [Court reviews rules and caselaw]

However, of the cases the Court reviewed on this issue, it found none that allowed a plaintiff to use a deposition in lieu of live testimony based solely on inconvenience of having to travel to testify. There doesn't appear to be any Eleventh Circuit cases on the point.

Other cases -- other plaintiffs in this case -- and I think this was telling.

Other plaintiffs in this case, at obvious sacrifice to themselves, their schedule -- one of them missed an anniversary, one of them had a disabled child, another mother was nursing and brought her child with her.

They understood the importance of being here; that is, if you're a plaintiff in a federal lawsuit and the case goes to trial, that, really barring . . . any extreme situation, you know, you have to be here, even though it's not the most convenient thing in the world.

I suppose all of these plaintiffs must have known when they filed a case in Jacksonville, Florida that some day they might have

> > to come to Jacksonville in order to testify or to participate in their own case.
>
> > And it just appears that Ms. Longoria doesn't really think that that's necessary. . . . I couldn't really discern anything that would indicate that she was willing to . . . make that decision to come here and . . . testify . . . .
>
> > . . . .
>
> > And so I am really reluctant to disallow a plaintiff who has filed a case in this court, who has a legal position that deserves to be heard -- I am very reluctant. And, you know, I understand the family issue. And I would be sympathetic to that if it was different.
>
> > I understand the inconvenience of it, which these other plaintiffs managed to overcome.
>
> > I've also demonstrated, I think, that in an appropriate circumstance, that is, the deposition we just saw, or the deposition of Ms. Jones, that . . . I would make the unavailability finding.
>
> > But . . . I think it would be honoring the [unavailability] rule in the breach if I were to extend that to Ms. Longoria in these circumstances.
>
> > And so even though I am reluctant to disallow her deposition testimony in lieu of . . . trial testimony -- and I leave open the door that if she wants to fly here tomorrow and testify, I'd be happy to hear from her. But . . . I'm going to sustain the objection to the trial use of her deposition testimony.

(Doc. 136 at 20–26).

Following the ruling, Plaintiffs originally asked that Edmondson's claims be dismissed, but then asked that they be severed instead. The Court responded: "Let's just say that Ms. Longoria's case will not be presented to the jury for [its] consideration. Her case is not dismissed. It's just not going to be presented, and that post trial we'll determine the appropriate legal vehicle to determine how to proceed in her case." Id. at 28. The trial concluded four days later and Edmondson did not testify.

10

Now, Edmondson asks the Court to schedule her a separate three-day jury trial. (Doc. 125). This request surprised the Court—I assumed that having decided not to go forward with her case at trial, either with or without her testimony, that she would dismiss her case. After being unwilling to attend her original trial because it did not fit her travel schedule, Edmondson wants the Court, members of a new jury, Defendants, as well as the trial witnesses, to spend substantial time and resources to reconvene for her trial, at her convenience. This, the Court will not do.

Edmondson's conduct demonstrates a clear pattern of delay and disregard for the Court and other parties involved in her case, equivalent to contempt. Betty K, 432 F.3d at 1338. She was never willing to attend trial, and although her counsel's inaccurate statements about why she would not come did not help the situation, it was Edmondson's personal conduct that created the pattern of delay. See id. (stating that dismissal with prejudice is more appropriate where it is the party, and not her counsel, that is culpable).

Additionally, no lesser sanction is appropriate. The only way to adjudicate Edmondson's claims is via trial, but Edmondson was given a trial—she chose not to come. She could also have asked to submit her claims to the jury without her testimony, as has been done in similar cases, but she elected not to do so. See Doc. 140 at 3 (explaining that in Edmondson v. Velvet Lifestyles, LLC, No. 1:15-cv-24442-Martinez/Louis (S.D. Fla. Aug. 27, 2019), the court permitted

11

non-testifying plaintiffs' cases to proceed to the jury).³ Thus, Edmondson's claims are due to be dismissed.

## II. DEFENDANTS' AMENDED RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

Defendants' renewed motion for judgment as a matter of law makes two primary arguments: (1) that Plaintiffs' expert Martin Buncher's testimony and survey is so flawed that it, standing alone, is insufficient evidence of consumer confusion; and (2) Shawn Hopper, a graphic designer who created the advertisements containing Plaintiffs Posada and Young's images, was an independent contractor and, therefore, Defendants cannot be liable for his offending work.

A Court should grant a Rule 50 motion if it finds that "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue . . . ." Fed. R. Civ. P. 50(a)(1). "Judgment as a matter of law is appropriate only if the facts and inferences point overwhelmingly in favor of one party, such that reasonable people could not arrive at a contrary verdict." Luxottica Grp., S.p.A. v. Airport Mini Mall, LLC, 932 F.3d 1303, 1310–11 (11th Cir. 2019) (quotation marks omitted) (quoting Equal Emp't Opportunity Comm'n v. Exel, Inc., 884 F.3d 1326, 1329 (11th Cir. 2018)). "[The Court] consider[s] all the

---

³ Edmondson was also a plaintiff in that case and did not appear at trial.

evidence, and the inferences drawn therefrom, in the light most favorable to the nonmoving party." Id. (quotation marks omitted). "[The Court] will not second-guess the jury or substitute [its] judgment for [the jury's] judgment if its verdict is supported by sufficient evidence." Id. (quotation marks omitted).

### A. Buncher's Testimony Regarding Consumer Confusion

This is the third time the Court has been asked to review Buncher's survey. (See Docs. 50, 108). In its prior rulings, the Court found that Defendants' arguments went to the weight of Buncher's testimony, not its admissibility—i.e. it is a jury question. The Court submitted the case to the jury with proper instructions (Doc. 98 at 9–13), and Defendants adequately exposed the significant weaknesses in Buncher's testimony on cross-examination. Nonetheless, the jury chose to credit him. Viewing the evidence in the light most favorable to Plaintiffs, the Lanham Act claims were properly submitted to the jury. Luxottica Grp., 932 F.3d at 1310–11.

### B. Posada and Young's Claims

Defendants argue that Posada and Young's claims should be dismissed because the evidence demonstrates that Hopper created the offending advertisements with their images, and he was an independent contractor who was not under Defendants' control. (Doc. 126 at 20–25). This argument fails. "Section 43(a) [of the Lanham Act, 15 U.S.C. § 1125,] provides a strict liability tort cause of action." Vector Prods., Inc. v. Hartford Fire Ins. Co., 397 F.3d 1316,

13

1319 (11th Cir. 2005). This is true even where the criminal conduct of third parties results in a defendant's false advertising. Phoenix of Broward, Inc. v. McDonald's Corp., 489 F.3d 1156, 1168 (11th Cir. 2007), abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118 (2014).

The evidence showed that Hopper was acting on Defendants' behalf when he posted the advertisements on Defendants' social media pages and websites. In any event, regardless of who posted the advertisements, Defendants are strictly liable for the content if it violates § 1125(a). See Vector Prods., 397 F.3d at 1319.

### III. PLAINTIFFS' MOTION FOR FEES AND COSTS

**A. Attorneys' Fees**

Plaintiffs who succeed under § 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) are entitled to recover their costs, and "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). "[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." Octane Fitness, LLC v. ICON Health & Fitness, Inc., 572 U.S. 545, 554 (2014) (explaining the criteria for awarding attorneys' fees under an identical provision in the Patent Act); see also Tobinick

14

v. Novella, 884 F.3d 1110, 1118 (11th Cir. 2018) (extending the Octane framework to Lanham Act cases). "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." Octane, 572 U.S. at 554. However, "[a] case will not qualify as exceptional under the Lanham Act merely because one side has zealously pursued or defended its claim, especially on an issue with no directly controlling precedent." Tobinick, 884 F.3d at 1119.

Plaintiffs argue this case is "exceptional" because of both the substantive strength of their litigating position and Defendants' manner of litigating the case. (Doc. 119 at 9, 11). Plaintiffs are incorrect regarding the substantive strength of their litigating position. Although Plaintiffs' Florida misappropriation claims were very strong (the Court granted Plaintiffs' Rule 50 motion at the close of the evidence), those claims do not qualify for attorneys' fees. Plaintiffs' Lanham Act claims were not "exceptional." Defendants raised valid arguments attacking a necessary element of a Lanham Act claim—consumer confusion. Although Defendants did not hire their own consumer confusion expert, they relied on Plaintiffs' inability to produce anyone who was actually confused by the advertisements and weaknesses in Buncher's survey, report, and testimony. While the Court has determined that the Lanham Act claims were sufficient to support the jury's verdict in Plaintiffs' favor, this does not equate to the case being "exceptional." Simply put, the substantive strength

or weakness of each party's litigation position on the Lanham Act claims was not "exceptional."

Next, Plaintiffs contend that Defendants' litigation conduct renders this case exceptional. Plaintiffs assert that Defendants engaged in "gamesmanship." (Doc. 119 at 14). Plaintiffs argue that Defendants' insurance adjuster, John Curtis, "refused to participate in any meaningful discussions" during the initial mediation where a third case, which was originally part of this consolidated action, was settled with a different insurance company. Id. at 13. Additionally, Plaintiffs assert that Curtis's sole intention in calling off the original settlement was to "harm Plaintiffs financially." Id. at 14. Lastly, Plaintiffs contend that Defendants' attorney stipulated to the authentication of the allegedly offending advertisements, but then reneged and stated he had no authority to sign the stipulation. Id. at 14–15.

None of these actions, individually or collectively, render this case "exceptional." Although the Court found Mr. Curtis to be off-putting, (see Docs. 53, 55-1–55-6, 57-1–57-4), that is of no moment. The Court determined that the parties did not have a meeting of the minds in reaching their original settlement because each party had a different but "reasonable interpretation[] of the negotiations." (Order Denying Motion to Enforce Settlement Agreement, Doc. 58 at 2). Refusing to settle and putting a plaintiff to its burden is not an exceptionally unreasonable manner of litigating this Lanham Act case. See

Tobinick, 884 F.3d at 1119 (finding that a case is not exceptional "merely because one side has zealously pursued or defended its claim."). Thus, Plaintiffs' motion for attorneys' fees is due to be denied.

**B. Costs**

A portion of Plaintiffs' costs are due to be granted. "When . . . a violation under section 1125(a) . . . shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, . . . subject to the principles of equity, to recover . . . the costs of the action." 15 U.S.C. § 1117(a). Further, Rule 54, Federal Rule of Civil Procedure, allows costs to the prevailing party. "A statute awarding 'costs' will not be construed as authorizing an award of litigation expenses beyond the six categories listed in §§ 1821 and 1920, absent an explicit statutory instruction to that effect." Rimini St., Inc. v. Oracle USA, Inc., 139 S. Ct. 873, 878 (2019). The district court has the discretion to tax as costs those items listed in § 1920, but it cannot tax as costs items not enumerated. Crawford Fitting Co. v. J. T. Gibbons, Inc., 482 U.S. 437, 441–42 (1987).

Plaintiffs seek $47,324.05 in costs: $800 in fees of the Clerk, $766.92 in fees for service of summons and subpoena, $7,349.70 in fees for transcripts necessarily obtained for use in the case, $1,874.93 in fees and disbursements for printing, $22,921.50 in witness fees, and $13,611 in other costs. (Doc. 119-5

at 2). Defendants argue that the Court should award only $8,566.67 in costs. (Doc. 127 at 19).

The Court finds Plaintiffs' current filings inadequate to determine costs. Thus, Plaintiffs shall file a renewed motion for costs that identifies the legal basis for each request and the amount sought for each category of reimbursable costs with clear and legible documentation to support those costs.[4]

Accordingly, it is hereby

**ORDERED:**

1. Defendants' Motion to Dismiss or, Alternatively, for Judgment as a Matter of Law (Doc. 138) is **GRANTED** as stated herein and is otherwise **moot**. Plaintiff Jaime Edmondson's claims are **dismissed with prejudice** under Rule 41(b).

2. Defendants' Amended Renewed Motion for Judgment as a Matter of Law (Doc. 126) is **DENIED**.

3. Plaintiffs' Motion for Fees and Costs (Doc. 119) is **GRANTED in part, DENIED in part, and DEFERRED in part**:

   a. Plaintiffs' motion for attorneys' fees is **DENIED**.

   b. Plaintiffs' motion for costs is **GRANTED** in that Plaintiffs are entitled to an award of costs. However, Plaintiffs are required to

---

[4] For example, Plaintiffs filed a receipt, Doc. 119-5 at 14, where more than half is face down and, thus, unreadable.

18

supplement their motion so the Court can determine the proper amount.

4. Defendants' Motion to Stay Consideration of Plaintiffs' Motion for Fees and Costs and Request to Make Adversary Submission on Amount of Plaintiffs' Fees and Costs after Entitlement is Determined, (Doc. 128), is **GRANTED in part** as explained herein. The Motion is otherwise denied.

5. Not later than **February 28, 2020**, Plaintiffs shall file a renewed motion for costs with a memorandum of law that includes citations to authorities to support its proposed costs as well as legible supporting documentation for those costs. In so doing, Plaintiffs should carefully review Defendants' arguments in opposition. See Doc. 127 at 14–19.

6. Not later than **March 16, 2020**, Defendants shall file a response to Plaintiffs' renewed motion for costs.

**DONE AND ORDERED** in Jacksonville, Florida this 6th day of February, 2020.

TIMOTHY J. CORRIGAN
United States District Judge

jb
Copies to:

Counsel of record